**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CARLOS ORELLANA-ESCOBAR,

    *Plaintiff*,

v.

JESSE FERNANDEZ, *et al.*,

    *Defendants.*

Civil Action No. 24-1767 (RDM)

**MEMORANDUM OPINION**

    Plaintiff Carlos Orellana-Escobar, proceeding *pro se*, brings this case against the District of Columbia and multiple D.C. Metropolitan Police Department ("MPD") officers under both federal and District law. Orellana-Escobar alleges that Defendants violated his rights during a March 25, 2024, arrest for public consumption of marijuana—conduct that, he insists, only constituted a civil violation rather than a criminal offense. Dkt. 16 at 2 (Am. Compl.). The Court granted Defendants' motion to dismiss Orellana-Escobar's original complaint, but it did so without prejudice and invited Plaintiff to file an amended complaint with more detailed factual allegations in support of his claims. Min. Entry (Apr. 30, 2025).

    Plaintiff has now filed an amended complaint, Dkt. 16 (Am. Compl.), and Defendants have once again moved to dismiss, Dkt. 17. Defendants argue, among other things, that Orellana-Escobar has failed plausibly to allege that his arrest was discriminatory, *id.* at 9–13; that he has not identified any other basis for a violation of his due process rights, *id.* at 13–15; that his arrest was supported by probable cause given his unconcealed, criminal conduct, *id.* at 16–17; and that the accompanying search of his vehicle was permissible under the Fourth Amendment,

*id.* at 17–19.  The Court issued a *Fox/Neal* Order directing Orellana-Escobar to respond to the motion, Dkt. 18, and he filed an opposition, Dkt. 20.

Because Plaintiff's amended complaint suffers from the same deficiencies as his original complaint, deficiencies that Plaintiff has failed to redress despite the opportunity to do so, the Court will **GRANT** Defendants' motion to dismiss.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's operative complaint, Dkt. 16 (Am. Compl.), which the Court accepts as true for the purpose of resolving the pending motion to dismiss.

Orellana-Escobar is a resident of the District of Columbia of Salvadoran origin who works on construction sites "laying . . . heavy metal rebar in large building foundations." *Id.* at 3–4 & 3 n.1 (Am. Compl. ¶¶ 7–8).  Because of a shoulder injury sustained on the job, he occasionally uses marijuana as a treatment for chronic pain.  *Id.* at 4 (Am. Compl. ¶¶ 8–9).  On the afternoon of March 25, 2024, Orellana-Escobar and another man, Erick Cruz, were smoking a hand-rolled marijuana cigarette in Orellana-Escobar's car on 14th Street N.W., near Lyman's Tavern.  *Id.* (Am. Compl. ¶ 11).  MPD Officer Fernandez approached the car from the driver's side, asked Orellana-Escobar (in Spanish) about the marijuana cigarette, and reached through the open window to grab it.  *Id.* at 4–5 (Am. Compl. ¶ 11).  Officer Fernandez then reviewed both Orellana-Escobar's and Cruz's identification information (Orellana-Escobar produced a District of Columbia driver's license, while Cruz had an identification card from the Republic of El Salvador), and his partner ran a check of the car's license and registration, which came back clean.  *Id.* at 5 (Am. Compl. ¶ 12).

Officer Fernandez then asked Orellana-Escobar for permission to search the vehicle. *Id* (Am. Compl. ¶ 13). When Orellana-Escobar refused, Officer Fernandez ordered both occupants to exit the car, handcuffed Orellana-Escobar, and "informed him he was under arrest for 'Public Consumption of Marijuana on Public Space.'" *Id.* Officer Fernandez then searched the vehicle but found no contraband, and the police allowed Cruz to leave the area. *Id.* (Am. Compl. ¶¶ 13–14). Following the search, the MPD officers drove Orellana-Escobar to the Fourth Division Police Station—without allowing him to lock his car, which contained various tools used for his work—where he was fingerprinted and photographed before being released with a criminal citation and an order to appear in D.C. Superior Court on April 18, 2024. *Id*. (Am. Compl. ¶¶ 15–17). When Orellana-Escobar arrived in Superior Court on that date, he was told that the charge had been dismissed. *Id.* at 6 (Am. Compl. ¶ 18).

Proceeding *pro se*, Orellana-Escobar then filed a complaint in D.C. Superior Court against Officer Fernandez, both individually and in his official capacity, and against the District of Columbia. Dkt. 1-1 (Compl.). In that complaint, Orellana-Escobar alleged that Officer Fernandez "engaged in . . . invidious discriminatory animus" by citing him for public consumption of marijuana—conduct that, Orellana-Escobar alleged, constituted only a "civil misdemeanor" in the District of Columbia. *Id.* at 5 (Compl. ¶ 11) (citation modified). He also alleged that Officer Fernandez unlawfully searched his car and intentionally caused him emotional distress and that the District had "failed to properly hire, train, and supervise [Officer] Fernandez." *Id*. at 5–6 (Compl. ¶¶ 12–15).

Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a). Dkt. 1. Orellana-Escobar objected to removal, arguing that the case raised only questions of D.C. cannabis law and did not concern federal law, Dkt. 5 at 1–2, which the Court construed as a

3

motion to remand for lack of subject-matter jurisdiction, Min. Order (July 15, 2024). Following additional briefing, the Court denied that motion to remand because Orellana-Escobar's complaint alleged a violation of the Fourth Amendment of the U.S. Constitution. Min. Order (Sep. 1, 2024).

Defendants then moved to dismiss the complaint, Dkt. 9, and Orellana-Escobar opposed the motion, Dkt. 11. The Court granted the motion on the record at a hearing on April 30, 2025. Min. Entry (Apr. 30, 2025). The Court explained that the allegations that Officer Fernandez was motivated by discriminatory animus were wholly conclusory; that Orellana-Escobar's alleged treatment did not rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress; that the complaint's allegations suggested that Officer Fernandez did, in fact, have probable cause to arrest Orellana-Escobar for public consumption of marijuana, a criminal misdemeanor; that the complaint failed to include sufficient factual allegations in support of the claim that Officer Fernandez's search of Plaintiff's car violated the Fourth Amendment; and that Orellana-Escobar did not appear to have given the District of Columbia adequate notice of the suit. Apr. 30, 2025 Hrg. Tr. (Rough at 12–20). The Court, however, dismissed the complaint without prejudice and permitted Orellana-Escobar to file an amended complaint with additional factional allegations. Min. Entry (Apr. 30, 2025).

Orellana-Escobar filed an amended complaint, Dkt. 16 (Am. Compl.), naming as defendants Officer Fernandez, Officer Fernandez's unidentified police partner, and Officer Mario A. Amador, the MPD officer who processed Plaintiff's arrest at the Fourth Division Police Station, in both their personal and official capacities, as well as the District of Columbia, *id.* at 3

4

(Am. Compl. ¶¶ 3–6).[1] Although his pleadings are difficult to parse, Orellana-Escobar appears to raise the following claims:

First, he alleges that Officer Fernandez's decision to arrest him, but not Cruz, constituted intentional discrimination in violation of the District of Columbia Human Rights Act ("DCHRA") and the Equal Protection Clause of the U.S. Constitution. *Id.* at 7 (Am. Compl. ¶ 28). Plaintiff also alleges that his arrest was unlawfully discriminatory given Officer Fernandez's failure to arrest other persons who had allegedly been observed smoking marijuana in public "in and around Lyman's Tavern and other similar establishments" in the District. *Id.* at 8 (Am. Compl. ¶ 29). More specifically, Plaintiff alleges that Officer Fernandez intended to target him because of Plaintiff's Salvadoran national origin. *Id.* (Am. Compl. ¶ 30).

Second, Plaintiff alleges that the subsequent processing of his arrest at the Fourth Division police station and the issuance of a criminal citation violated his rights to due process and equal protection under the DCHRA and the U.S. Constitution. *Id.* (Am. Compl. ¶ 30).[2]

Third, he alleges that the District of Columbia has "promulgated conflicting official notices, regulations, statutes, codes and modes of punishments" that "variously hold[] that smoking marijuana in a public space is a civil misdemeanor, a criminal misdemeanor, not punishable by either a fine or jail time, to punishment including a jail sentence of up to 60 days, a mandatory order to appear in court, and a criminal arrest record." *Id.* (Am. Compl. ¶ 31). Plaintiff does not cite to any statute or constitutional provision, other than the D.C. cannabis regulations themselves, that he believes is implicated by this claim. *Id.*

---

[1] The Court will dismiss the official-capacity suits against the relevant MPD officers as duplicative of the claims against the District itself. *See Jones v. Quintana,* 658 F. Supp. 2d 183, 195 (D.D.C. 2009).

[2] Plaintiff's complaint includes two paragraphs numbered "30." Dkt. 16 at 8 (Am. Compl.).

Notably, unlike his original complaint in this case, Plaintiff's amended complaint does not include an allegation under the header "LEGAL CLAIMS" asserting that the search of his car was unlawful.  *Id.* at 7–8 (Am. Compl. ¶¶ 28–31); *cf.* Dkt. 1-1 at 5 (Compl. ¶ 12) ("[Officer] Fernandez violated Orellana-Escobar's right to be free from illegal search when [Officer] Fernandez conducted a thorough search of Orellana-Escobar's car after Orellana-Escobar denied his verbal request to a consensual search.").  The amended complaint also omits the allegations from the original complaint asserting that "[Officer] Fernandez, with malice aforethought, caused Orellana-Escobar intentional emotional distress;" that "[Officer] Fernandez knowingly placed Orellana-Escobar under false arrest;" and that the District "failed to properly hire, train, and supervise [Officer] Fernandez."  *Compare* Dkt. 1-1 at 5–6 (Compl. ¶¶ 13–15), *with* Dkt. 16 at 7–8 (Am. Compl. ¶¶ 28–31).

Plaintiff requests, among other relief, a declaration that the District's cannabis regulations "lead to absurd results and *ad hoc* arrest decisions in the field" and cause officers to "criminalize what was always intended . . . to be a civil offense" and "have led to various modes of capricious enforcement . . . purposefully designed to impede individuals like Orellana-Escobar[] to their legal access to medical cannabis consumption;" a declaration that his arrest violated his right to due process and equal protection; and damages.  *Id*. at 9 (Am. Compl.).

In response, Defendants filed a second motion to dismiss or, in the alternative, for summary judgment.  Dkt. 17.  The Court issued a *Fox/Neal* order, Dkt. 18, and Plaintiff opposed Defendants' motion, Dkt. 20.  After the motion to dismiss was fully briefed, Plaintiff filed a "Notice and Declaration" on September 15, 2025, asserting that Cruz had been arrested in August 2025 by federal Immigration and Customs Enforcement ("ICE") agents.  Dkt. 23 at 1.  Plaintiff asked the Court to order Defendants to return Cruz to the District of Columbia given

6

Cruz's status as a witness in this case. *Id*. at 1, 3.  Following Defendants' representation that the District of Columbia had no involvement in Cruz's alleged arrest, Dkt. 24 at 1, and noting that Plaintiff's own filings claimed that Cruz was detained by the U.S. Department of Homeland Security, which is not a party to this case, the Court found no basis for any judicial action concerning Cruz's arrest or detention.  Min. Order (Oct. 10, 2025); Min. Order (Dec. 5, 2025).  Defendants' second motion to dismiss is now before the Court.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."[3] Fed. R. Civ. P. 12(b)(6).  To survive a motion brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  A court must consider the whole complaint, accepting factual allegations as true and construing all reasonable inferences in favor of the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  But a court "need not accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  The Court may dismiss a complaint under Rule 12(b)(6) with or without prejudice, but "[t]he standard for dismissing a complaint with prejudice is high," *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012) (citation modified), and should be granted "only when a trial court determines that the

---

[3] Because the Court will grant Defendants' motion to dismiss under Rule 12(b)(6), the Court need not address Defendants' alternative motion for summary judgment under Rule 56.

7

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (citation modified).

In applying these standards, moreover, courts must be mindful that *pro se* filings are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified).

### III. ANALYSIS

**A.    Probable Cause for Arrest**

The Court first addresses a foundational, erroneous premise that underpins Plaintiff's complaint and briefing. Plaintiff repeatedly argues that his undisputed conduct, the public consumption of marijuana, constituted only a civil violation and did not justify a lawful arrest. Dkt. 16 at 4, 8 (Am. Compl. ¶¶ 10, 30); Dkt. 20 at 6–7. As the Court explained at the prior hearing in this case, Apr. 30, 2025 Hrg. Tr. (Rough at 15), Plaintiff is mistaken.

D.C. law provides that "[n]otwithstanding any other District law, it is unlawful for any person to smoke or otherwise consume marijuana in or upon a public space," which includes in "[a] vehicle in or upon any street, alley, park, or parking area," and that a person who violates that statute "shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine . . . or imprisoned for not more than 60 days." D.C. Code § 48-911.01; *see also The Facts on DC Marijuana Laws*, Metro. Police Dep't D.C., https://perma.cc/V8F6-TE4B. Although other provisions of D.C. law permit adults to use and to possess two ounces or less of marijuana and to grow marijuana plants in their own homes, D.C. Code § 48-904.01(a)(1)(A)–(D), it is apparent that Plaintiff's own admitted conduct, smoking marijuana in a car parked on a public street, Dkt. 16 at 4 (Am. Compl. ¶ 11), constituted a criminal offense. The Court does not doubt that the prohibition on the public consumption of marijuana often goes unenforced in the

8

District, and the Court is prepared to assume, for present purposes, that Plaintiff was legitimately confused about whether the public consumption of marijuana in the District constituted a crime. As a legal matter, however, it is clear that Orellana-Escobar's conduct violated the D.C. criminal code and that, because he committed a misdemeanor in plain view of an MPD officer, his arrest was lawful. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Accordingly, to the extent that Plaintiff's amended complaint can be construed to re-assert the claim for false arrest that Plaintiff included in his original complaint, Dkt. 1-1 at 5 (Compl. ¶ 14), that claim fails as a matter of law, *see Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 912 (D.C. Cir. 2015) ("The existence of probable cause for arrest defeats claims for false arrest and imprisonment."); *see also Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989 (D.C. Cir. 2014) ("Constitutional and common law claims of false arrest are generally analyzed as though they comprise a single cause of action."). Similarly, to the extent that Plaintiff's amended complaint alleges that his arrest for conduct that, he believed, constituted only a civil infraction violated Plaintiff's due process rights, that claim also fails as a matter of law. *See United States v. Holland*, 810 F.2d 1215, 1222 (D.C. Cir. 1987) ("Generally . . . ignorance of the law does not serve as an excuse for criminal conduct."). The Court will, therefore, dismiss both such claims.

The Court will also dismiss any claim alleging that the District of Columbia's criminal prohibition on the public consumption of marijuana is void for vagueness. "A law is vague when 'it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir.

2017) (alteration in original) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). The District's express prohibition on "smok[ing] or otherwise consum[ing] marijuana in or upon a public space," including in "[a] vehicle in or upon any street, alley, park, or parking area," D.C. Code § 48-911.01(a), is not void for vagueness, even when considered alongside other provisions of D.C. law that otherwise permit the possession of small quantities of marijuana.

## B.     Discriminatory Arrest

The Court turns next to Plaintiff's claim that his discriminatory arrest, based on his Salvadoran national origin, violated the Equal Protection Clause of the Fifth Amendment.[4] Dkt. 16 at 7–8 (Am. Compl. ¶¶ 28–30). The D.C. Circuit has identified "at least three ways a plaintiff can plead an equal protection violation." *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 63 (D.C. Cir. 2016). First, a plaintiff might "allege that the government has expressly classified individuals based on their [national origin]." *Id*. Second, a plaintiff might allege "that the government has applied facially neutral laws or policies in an intentionally discriminatory manner." *Id*. Third, a plaintiff might allege "that facially neutral laws or policies 'result in [national-origin-based] disproportionate impact and are motivated by a [nationality-based] discriminatory purpose.'" *Id*. (quoting *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 213 (1995)). The first possibility, express classification based on national origin, is not at issue in this case; for obvious reasons, Plaintiff does not allege that the D.C. law is facially discriminatory. *See generally* Dkt. 16 (Am. Compl.); *see also* D.C. Code § 48-911.01(a)

---

[4] Plaintiff's amended complaint raises equal protection (and due process) claims under both the Fifth and Fourteenth Amendments. Dkt. 16 at 7–8 (Am. Compl. ¶¶ 28–30). Because the District of Columbia is not a state, the protections of the Fourteenth Amendment are inapplicable to this case. *United States v. Jackson*, 553 F.2d 109, 119 n.19 (D.C. Cir. 1976); *Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001). The Court, accordingly, addresses his constitutional claims only under the Fifth Amendment.

(providing that "it is unlawful for any person to smoke or otherwise consume marijuana in or upon a public space," with no express national origin classification). Nor does Plaintiff allege, let alone support with sufficient, specific factual allegations, that the District's facially neutral marijuana regulations were enacted with a purpose of discriminating against Salvadoran nationals. The Court, accordingly, will construe Plaintiff's amended complaint as seeking to proceed under the second theory, alleging that the MPD officers enforced the District's marijuana laws against him in an intentionally discriminatory manner based on his Salvadoran national origin. *See* Dkt. 16 at 8 (Am. Compl. ¶ 30) (alleging that "after [Officer] Fernandez and his police partner determined that Orellana-Escobar was a Salvadoran," they "selected Orellana-Escobar for a particular incident of intentional discrimination based on nationality").

Plaintiff has failed plausibly to allege that Officer Fernandez targeted him based on his Salvadoran nationality. Insofar as the amended complaint simply alleges that Officer Fernandez's action "was a purposeful incident of invidious discrimination," Dkt. 16 at 8 (Am. Compl. ¶ 30), that allegation is wholly conclusory and, thus, is "not entitled to be assumed true" for purposes of resolving the pending motion to dismiss, *Iqbal*, 556 U.S. at 681. Plaintiff has failed to plead any facts that might "give rise to a plausible inference that [his] arrest was the result of unconstitutional discrimination." *Id.* at 682. In both his complaint and his brief in opposition to Defendants' motion to dismiss, Plaintiff suggests, at most, that Officer Fernandez might have been aware of his Salvadoran national origin. Plaintiff claims, for example, that "[Officer] Fernandez was speaking a dialect of Dominican Spanish," and he suggests that, because native Spanish speakers can identify a fellow Spanish speaker's "country of origin from the manner of speech," Officer Fernandez would have known of Plaintiff's Salvadoran national origin from their conversation prior to the arrest. Dkt. 20 at 5–6.

11

But even assuming that Officer Fernandez knew (or inferred) that Orellana-Escobar was Salvadoran, that knowledge would not, standing alone, support a plausible inference that Officer Fernandez arrested Orellana-Escobar based on an anti-Salvadoran prejudice—just as, for example, the fact that Officer Fernandez (presumably) knew that Orellana-Escobar was male would not by itself support a plausible claim that the arrest was attributable to gender discrimination. Plaintiff acknowledges, moreover, that the MPD officers allowed Cruz to leave the scene without arrest despite knowing (or inferring) that Cruz was also Salvadoran. Dkt. 20 at 6. Although Plaintiff, confusingly, suggests that Officer Fernandez's failure to arrest Cruz for the same offense implies that Plaintiff's own arrest was motivated by nationality-based animus, *id.*, the fact that the MPD officers did not act against another Salvadoran present at the scene is at odds with Plaintiff's claim that Defendants' conduct was attributable to anti-Salvadoran animus.

Plaintiff also appears to allege that Officer Fernandez's decision to arrest Plaintiff, but not any of the other individuals who routinely smoke marijuana in public around Lyman's Tavern and other locations in the District, violated his rights under the Equal Protection Clause. Dkt. 16 at 7–8 (Am. Compl. ¶¶ 28–29). To the degree that this claim is distinguishable from the claim of anti-Salvadoran animus discussed above, it would present a "class of one" equal protection claim. "A 'class of one' equal protection claim may be maintained 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *XP Vehicles, Inc. v. U.S. Dep't of Energy*, 118 F. Supp. 3d 38, 75 (D.D.C. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Courts accord deference to the government when resolving such claims. The plaintiff must both identify others similarly situated and, in light of the presumption of rationality that applies to government action on the posture of rational basis

12

review, "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)).

Plaintiff's amended complaint fails to allege facts sufficient to clear that high hurdle, even at this early stage of the litigation. The amended complaint alleges that "marijuana is regularly consumed by some of the patrons who frequent Lyman's Tavern, and several other restaurants in the area," and it alleges in conclusory terms that Officer Fernandez "arrested Orellana-Escobar, while ignoring other people who were and are smoking cannabis in [his] presence and/or jurisdiction." Dkt. 16 at 7 (Am. Compl. ¶ 27). For at least two reasons, those allegations do not suffice. First, Plaintiff does not allege with any factual specificity that he was similarly situated to other individuals whom MPD has permitted to consume marijuana in public in the District. He does not allege that he was arrested while smoking in the smoking area of Lyman's Tavern or any other restaurant and does not allege that any of the other, unnamed individuals who avoided arrest were smoking marijuana in a car on a public street. Second, Plaintiff does not allege in a non-conclusory fashion that Officer Fernandez, or any other MPD officer, witnessed any other individual smoking marijuana in public but declined to arrest that individual. The complaint alleges, for example, that Cruz and Orellana-Escobar were smoking a cannabis cigarette prior to the arrest, Dkt. 16 at 4 (Am. Compl. ¶ 11), and that Officer Fernandez, approaching the car from the driver's side (where, presumably, Orellana-Escobar, the owner of the car, was sitting) seized the cigarette through that window. But it does not allege that Officer Fernandez witnessed Cruz smoking at the time he approached the car or that Cruz was not also Salvadoran, *id.* In any event, there is certainly a rational basis (assuming that Plaintiff does not contend that the MPD discriminated in favor of Cruz and against Plaintiff based on anti-

13

Salvadoran animus) to distinguish between someone sitting in the driver's seat of a car under the influence and others who pose a less obvious risk of driving under the influence.

Plaintiff's "class of one" claim thus reduces to a general complaint that other individuals routinely succeed in violating the law that Plaintiff was arrested for breaking. Because it is inevitable that law enforcement will not arrest everyone who commits a criminal offense, that cannot be enough, by itself, to allege a plausible equal protection violation.

Finally, Plaintiff makes similar allegations of a violation of his equal protection rights under the DCHRA. It is unclear that the DCHRA's language, which provides that the District may not "limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's . . . national origin," D.C. Code. § 2-1402.73, applies to a claim for discriminatory arrest. The Court is unaware of any case applying the DCHRA—which generally concerns employment, housing, public accommodations, and education, *see id.* § 2-1402.01 *et seq.*—to a claim of police misconduct of this type, and Plaintiff does not identify any such case in his opposition to Defendants' motion to dismiss. In any event, the Court need not reach the question of whether the DCHRA would prohibit Plaintiff's arrest on the basis of his national origin because, for the reasons explained above, Plaintiff has failed plausibly to allege that such discriminatory intent motivated his arrest in this case. *See Morris v. District of Columbia*, 313 A.3d 545, 551 (D.C. 2024) (DCHRA requires alleging "discriminatory animus or a culture of discrimination").

## C.   Additional Claims

### 1.   *Unlawful Search*

At the hearing on Defendants' previous motion to dismiss, the Court suggested that Plaintiff's unlawful search claim "presents the closest and most difficult question," Apr. 30, 2025 Hrg. Tr. (Rough at 17), but ultimately concluded that the claim lacked sufficient detail or support

14

to survive Defendants' motion to dismiss. The Court invited Plaintiff, however, to file an amended complaint with more detailed factual allegations identifying which portions of the car were searched, sufficient to allow the Court to determine whether Plaintiff had plausibly alleged that Officer Fernandez had exceeded Fourth Amendment restrictions on vehicle searches incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

Plaintiff apparently declined this invitation. Rather than supplement his allegations, the "LEGAL CLAIMS" portion of Plaintiff's amended complaint omits entirely his previous claim that Defendants "violated Orellana-Escobar's right to be free from illegal search." *Compare* Dkt. 1-1 at 5 (Compl. ¶ 12), *with* Dkt. 16 at 7–8 (Am. Compl. ¶¶ 28–31). Instead, Plaintiff merely alleges, in a conclusory fashion in the introductory statement of his amended complaint, that MPD officers "engaged Orellana-Escobar in an illegal search." Dkt. 16 at 2 (Am. Compl.). Plaintiff's amended complaint can thus be read as abandoning the Fourth Amendment unlawful search claim, which appeared in his original complaint. But even if the claim were not abandoned, Plaintiff has failed to include the additional, specific factual allegations that the Court explained were necessary plausibly to allege a Fourth Amendment violation in light of his lawful arrest for public consumption of marijuana in his car. The amended complaint avers only that Officer Fernandez "returned to Orellana-Escobar's vehicle and searched it" following the arrest. *Id.* at 5 (Am. Compl. ¶ 13). Without more detail, the Court must once again conclude that Plaintiff has failed plausibly to allege that the search of his car exceeded the lawful,

15

warrantless search of the portions of the vehicle that Officer Fernandez would have reasonably believed contained evidence of the offense.  *See Gant*, 556 U.S. at 339.

        2.      *Negligent Hiring, Training, and Supervision*

Plaintiff's original complaint also alleged that "[t]he District of Columbia, as a municipality, failed to properly hire, train, and supervise [Officer] Fernandez" and that this failure "resulted in Orellana-Escobar being cited for a criminal felony when [Officer] Fernandez knew or should have known that no criminal act had occurred."  Dkt. 1-1 at 5–6 (Compl. ¶ 15).  As with the claim for unlawful search discussed above, this claim does not appear in the amended complaint, aside from a conclusory statement in the introduction that "[c]laims are asserted against the District of Columbia for the negligent hiring, training, and supervising of [Officer] Fernandez, his police partner, and Mario A[.] Amador, the arrest processing officer who un-cuffed, finger-printed, photographed, and issued a criminal citation for an offense that is civil, not criminal."  Dkt. 16 at 2 (Am. Compl.).

To the extent that the claim has not been abandoned, and does not independently fail given its reliance on Plaintiff's erroneous belief that the public consumption of marijuana does not constitute a criminal offense in the District of Columbia, the claim must be dismissed because Plaintiff does not plausibly allege any "dangerous or otherwise incompetent" conduct by any MPD officer, let alone that the District, as employer, "knew or should have known" of such behavior.  *Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 254 (D.D.C 2025) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)).  Nor does Plaintiff offer any non-conclusory allegations regarding how the hiring of any of the officers involved was negligent.

16

3.  *Preliminary Injunction*

Finally, Plaintiff requests for the first time in his opposition that the Court issue a preliminary injunction. Dkt. 20 at 13–14. The precise scope of the requested preliminary injunction is unclear, but Plaintiff appears to ask that the Court enjoin the District from enforcing the cannabis regulations that, Orellana-Escobar believes, are self-contradictory. *Id*.

The Court will deny Plaintiff's motion for a preliminary injunction. First, Plaintiff's request is procedurally improper because it seeks relief that was not requested in the operative complaint and was not made in a separate motion. *See* LCvR 65.1(c) ("An application for a preliminary injunction shall be made in a document separate from the complaint."). Second, Plaintiff has failed to carry his burden of establishing a likelihood of success on the merits of any of his claims, for the reasons the Court explained above. *See Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011) ("[w]hen a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors" for a preliminary injunction).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 17, is hereby **GRANTED**. Moreover, because Plaintiff has twice failed to plead facts sufficient to support his claims and, after receiving guidance from the Court regarding the deficiencies in his complaint, has failed to overcome the fundamental legal flaws in his case, the Court will dismiss the amended complaint with prejudice.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 21, 2026